**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

STEPHEN B. MARSDEN,

      **Plaintiff,**

v.                                    **CASE NO. 2:07-cv-00678**

ARNETT & FOSTER, P.L.L.C.,

      **Defendant.**


**<u>MEMORANDUM OPINION</u>**

    This is a case in which Plaintiff, proceeding *pro se*, alleges that Defendant, a firm of certified public accountants, discriminated against him on the bases of his race and his age when Defendant failed to interview or hire Plaintiff for a position as an IT (information technology) engineer.  The complaint was filed pursuant to 42 U.S.C. 2000e *et seq.*, 42 U.S.C. §§ 1981, 1981A and 1988, and 29 U.S.C. § 621 *et seq.*  Plaintiff further complains that Defendant intentionally inflicted emotion distress on him.  Pending before the court is Defendant's motion for summary judgment (docket # 83).

**Jurisdiction**

    This court has subject matter jurisdiction over this civil action which arises under laws of the United States, 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The case was originally filed in the Circuit Court of Kanawha

County, West Virginia, and removed pursuant to 28 U.S.C. § 1441(b)
(# 1).   In their Rule 26(f) report, the parties consented to a
magistrate judge conducting all proceedings and ordering entry of
judgment, pursuant to 28 U.S.C. § 636(c)(1).   (# 16, at 4.)   This
magistrate judge was specially designated to exercise such
jurisdiction by this court (# 17; LR Civ P 73.1(a)).

## Standard of Review

In evaluating summary judgment motions, Rule 56 of the Federal
Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings,
> the discovery and disclosure materials on file, and any
> affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to
> judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007).   Material facts are those necessary
to establish the elements of a party's cause of action.   Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the
record and all reasonable inferences drawn therefrom in a light
most favorable to the non-moving party, a reasonable fact-finder
could return a verdict for the non-movant.   Id.   The moving party
has the burden of establishing that there is an absence of evidence
to support the nonmoving party's case.   Celotex Corp. v. Catrett,
477 U.S. 317, 325 (1986).   Even if there is no dispute as to the
evidentiary facts, summary judgment is also not appropriate where
the ultimate factual conclusions to be drawn are in dispute.

<u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at 322-23.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e) (2007).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

3

As a *pro se* plaintiff, Mr. Marsden received a <u>Roseboro</u>[1] notice by Order entered May 27, 2009 (# 88).  He has responded to Defendant's motion in two documents (## 85 and 90); the court will consider the second response (# 90) only as it was intended as a substitute for the first (# 85).  Plaintiff has also submitted affidavits from himself and Rebecca Bryant Marsden (## 91, 92).  Defendant submitted a reply (# 94).

## Facts Not in Dispute

Plaintiff is a British citizen of mixed race (African American, Caucasian and Native American), residing in this District, who was 42 years old when he applied for a position with Defendant in the spring of 2005.  (Complaint, # 1-2, ¶ 2, at 4.)  During May, 2005, Plaintiff was conducting a trans-Atlantic email courtship with Rebecca Bryant, who was then employed by Defendant as its receptionist.  <u>Id.</u>, ¶ 1, at 1.  Ms. Bryant became aware of an opening in Defendant's IT department and submitted Plaintiff's resumé through another employee.  <u>Id.</u>, ¶ 11, at 6.

In June, 2005, Plaintiff traveled to the United States and met Rebecca Bryant in person.  (# 83, Rebecca Marsden Depo., Ex. 1 at 66.)  Soon Plaintiff and Ms. Bryant were engaged to be married.  <u>Id.</u>  When Plaintiff traveled to the United States in the spring and summer of 2005, he informed immigration authorities that he was traveling for pleasure, not business.  (# 83, Plaintiff's Depo.,

---

[1] <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

4

Ex. 7, at 74-75.)  Until September 21, 2006, Plaintiff was not authorized to be employed in the United States.  Id. at 17-22.

After Ms. Bryant submitted Plaintiff's resumé in the spring of 2005, Defendant advertised in local newspapers during July, 2005, for applicants for the IT engineer position.  Id., ¶ 16, at 6. Defendant established a committee to review the applications received and to interview the finalists.  (# 83-5, Affidavit of Lane Ellis, Ex. 12, ¶¶ 10-11, at 2.)  Plaintiff was not a finalist; thus he was not interviewed.  Id.  Stephan Looney was hired and began his employment with Defendant in October, 2005.  Id., ¶¶ 14-15, at 3-4.

In May 2006, Rebecca Bryant was assigned to file the resumés received for the position of IT engineer, including Plaintiff's. (# 83, R. Marsden Depo., Ex. 1, at 87-89.)  She copied the resumés of those who were interviewed and took the copies home to Plaintiff.  Id. at 102-05.  She also downloaded materials from Defendant's computer network to a flash drive, took them home to Plaintiff, who transferred the materials to a computer.  These materials, which include racist "humor," are the subject of the Memorandum Opinion and Order entered herein on  October 7, 2009 (# 95).  By letter dated June 1, 2006, Plaintiff himself, for the first time, contacted Defendant concerning his application for IT engineer, inquiring as to why he was not interviewed. (Complaint, # 1-2, ¶ 1, at 6; # 83-5, Ex. 18.)  Defendant's Executive Director,

David Hill, replied by letter dated June 6, 2006, which reads, in pertinent part, as follows:

> [W]e can confirm that your resume was considered along with those of approximately 60 other individuals who applied for the IT Engineer position advertised in the Charleston newspapers in July 2005.
>
> Our firm's IT personnel reviewed each resume and other responses we received based upon the job qualifications of IT Engineer, which were summarized in the newspaper advertisement, and eliminated from consideration less qualified applicants for purposes of reaching a manageable number of candidates to interview. Based upon your resume, we concluded that you were not among the most qualified candidates for the position.
>
> When Becky submitted your resume to me on one occasion last year, I specifically stated that your experience would not fit into our internal IT group.  I assured Becky that if I became aware of companies looking for someone with your qualifications, I would be happy to pass your resume along to them as a favor to her. * * *
>
> Our regular practice is not to respond to every resume or inquiry we receive in response to a "blind" job advertisement (meaning one in which the name of the Firm is not listed).  This is the reason you did not receive a written or other response.

(# 83-5, Ex. 19.)

### First Cause of Action - Failure to Hire (Race)

Plaintiff's first cause of action for failure to hire based on race discrimination alleges that he was "treated in a disparate manner to all the other applicants for the job who were white males." (# 1-2, ¶ 33, at 9.)  The basis for his claim of disparate treatment is that he asserts that applicants who were related to or friends of current Arnett & Foster employees received an interview, but Plaintiff did not.  Id., ¶ 32.  He claims that:

6

> A.  The reason given for Mr. Marsden' [sic] failure to hire was a mere pretext for unlawful discrimination in that David Hill's reasons were untrue because he never received a résumé from or had a conversation with Ms. Bryant about the job.
>
> B.  Mr. Bragg said that Mr. Marsden was over qualified and therefore this contradicts the reasons given by David Hill.

Id., ¶ 34.  During his deposition, Plaintiff testified that the basis for his belief that Defendant discriminated against him based on his race was his wife's discovery, downloading and sharing of racist materials on Defendant's computer network, and the lack of African-American employees.  (# 83-4, Ex. 7, at 61-63.)

The Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ... because of such individual's race ...."

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of racial discrimination.  This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Of the four essential elements listed by the Supreme Court, Defendant admits that Plaintiff is a racial minority, that it had possession of Plaintiff's resumé, and that it did not hire Plaintiff for the position (# 84, at 11).  Defendant disputes that

Plaintiff was qualified for the job of IT Engineer based on his immigration status and on his allegedly deficient education, training, certifications and experience. Id. at 12-17.

**Immigration Status**

Defendant contends that Plaintiff was not "qualified" for the position of IT engineer because he was not authorized to work in the United States during the summer of 2005 when the position was open (# 84, at 15).

During his deposition, Plaintiff admitted that in May of 2005 he knew that he was not authorized to work in the United States. (# 83-4, Ex. 7, Pl. Depo. at 21-22, 86.) He also admitted that the only period of time during which he was authorized to work in this country was during the period September 21, 2006 to September 20, 2007. Id. at 18-22, 24-26, 86.

Plaintiff's response to Defendant's argument is as follows:

> The Defendant states that because the Plaintiff did not have work authorization in 2005 that his employment discrimination claims are moot. Defendant has not shown a body of law that renders this moot. 8 U.S.C. § 1324a does not apply because Plaintiff was not hired. Additionally, the Plaintiff still does not have a United States Passport and will not need one. The Defendant is overstating the requirements to create a smoke screen. In effect, the Defendant is arguing that it is legally permissible to discriminate against a non-US Citizen without a US Passport or work authorization. The EEOC are quite clear on this issue and the Defendant's argument does not follow the EEOC's stance on Title VII violations (Exhibit I, EEOC Press Release).

(# 90, at 15.)

The United States Court of Appeals for the Fourth Circuit has

addressed an employment discrimination claim by an individual lacking a work authorization, and has ruled against the non-citizen. In <u>Egbuna v. Time-Life Libraries, Inc.</u>, 153 F.3d 184, 186 (4th Cir. 1998), the Fourth Circuit found "that Egbuna has no cause of action because his undocumented status rendered him ineligible both for the remedies he seeks and for employment within the United States."

> A plaintiff is entitled to the above remedies [hiring, reinstatement, back pay, injunction] *only* upon a successful showing that the applicant was qualified for employment. When the applicant is an alien, being "qualified" for the position is not determined by the applicant's capacity to perform the job – rather, it is determined by whether the applicant was an alien authorized for employment in the United States at the time in question. Congress so declared in the Immigration Reform and Control Act of 1986 ("IRCA"), which was enacted to reduce the influx of illegal immigrants into the United States by eliminating the job magnet. [Footnote omitted.] IRCA declares it unlawful for employers to employ, recruit, or refer for a fee all unauthorized aliens. [Footnote 15. 8 U.S.C. A. § 1324a (West Supp. 1997).] IRCA identifies unauthorized aliens as those individuals who at the particular time relating to employment are aliens neither *lawfully admitted for permanent residence*, nor authorized to be so employed by IRCA or by the Attorney General. [Footnote 16. *Id.* § 1324a(h)(3).]

<u>Id.</u> at 187. In the spring and summer of 2005 when Defendant had an opening for an IT engineer, Plaintiff was neither lawfully admitted for permanent residence in the United States nor authorized to be so employed by IRCA. Accordingly, he was not "qualified."

Based on <u>Egbuna</u> and Plaintiff's admissions, under oath, that he lacked authorization to be employed in the United States during

the period in question, the court finds that Plaintiff was not "qualified" for employment with Defendant and that he cannot meet his burden to establish one of the essential elements of his cause of action for failure to hire.

### Technical Qualifications

Due to the court's finding that Plaintiff was not qualified due to his lack of a work authorization, it is not necessary to address the issue of whether Plaintiff was technically qualified for the position of IT engineer.  The court notes that in a chart in Defendant's reply, Plaintiff is quoted as admitting that he does not possess the education, technical experience and certifications specified in Defendant's advertisement.  (# 94, at 6-9.)

### Second Cause of Action - ADEA (Age)

Plaintiff's second cause of action, based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, incorporates by reference other allegations in the complaint (# 1-2, ¶ 43, at 11).  There are few allegations which refer to Plaintiff's age.  In the "statement of claim," Plaintiff asserts that one of Defendant's employees told Ms. Bryant that "they would probably hire someone with less experience."  Id., at 2.  When Plaintiff applied, he was 42 years old.  Id., ¶ 2, at 4.  In paragraph 16 of the complaint, at page 6, Plaintiff alleges that "Mr. Bragg told Ms. Bryant that Mr. Marsden had too much experience."  Plaintiff's affidavit states, "[i]t is my belief that

I was overlooked in the hiring process because of my race – black and age – over 40." (# 92, ¶ 9, at 3.) Plaintiff answered an interrogatory with the statement, "I never heard any comment regarding my age." (# 83-5, Ex. 15, ¶ 6, at 1.) In a letter dated January 28, 2007, to the EEOC investigator, Plaintiff wrote that "[t]he candidates interviewed all appear to be younger than 40 and are all white." (# 83-6, Ex. 25, at 3.) The court has not found any additional age-related allegations.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Anyone over the age of 40 is a member of a protected class under the ADEA. 29 U.S.C. § 631(a). Having established membership in a protected class, the elements of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) apply.

In <u>Chaudhry v. Mobil Oil Corp.</u>, 186 F.3d 502, 505 (4th Cir. 1999), the court held that Chaudhry, who admitted that he did not have the specific documentation required to become authorized for employment in the United States, "was not qualified for employment and is ineligible for Title VII protection." The court also addressed ADEA and held that it also requires that a plaintiff be qualified for employment. Thus Chaudhry was also ineligible for ADEA protection. <u>Id.</u>

Based on the holding in <u>Chaudhry</u>, the court finds that

11

Plaintiff was not qualified due to his lack of a work authorization, and thus he is ineligible for ADEA protection.

## Third Cause of Action - Intentional Infliction of Emotional Distress

Plaintiff's state law claim of intentional infliction of emotional distress is based on his allegation that Defendant subjected Plaintiff "to a pattern of discrimination and misconduct based, in whole or in part, on his age, and/or race." (Complaint, # 1-2, ¶ 46, at 14.)   He complains that Defendant's conduct was extreme and outrageous. <u>Id.</u>, ¶ 47. During Plaintiff's deposition, he identified six examples of conduct which caused him emotional distress: (1) his wife's termination; (2) an instruction to his wife not to display his photograph at Defendant's reception desk; (3) his banishment from Defendant's premises; (4) Defendant's member (Jack Rossi) describing to the EEOC that Plaintiff wore baggy clothes; (5) his feeling of stigma concerning the subject matter of this litigation; and (6) his wife's discovery of offensive material on Defendant's computer network.  (# 84, at 25-26; # 83-4, Ex. 7, at 169, 178, 180-81 and 183-84.)

The Supreme Court of Appeals of West Virginia recognized a cause of action for intentional infliction of emotional distress in <u>Harless v. First Nat'l Bank in Fairmont</u>, 289 S.E.2d 692 (W. Va. 1982).  The elements of the cause of action are as follows:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established.  It must be shown: (1)

12

that the defendant's conduct was atrocious, intolerable,
and so extreme and outrageous as to exceed the bounds of
decency; (2) that the defendant acted with the intent to
inflict emotional distress, or acted recklessly when it
was certain or substantially certain emotional distress
would result from his conduct; (3) that the actions of
the defendant caused the plaintiff to suffer emotional
distress; and, (4) that the emotional distress suffered
by the plaintiff was so severe that no reasonable person
could be expected to endure it.

Syl. Pt. 3, Travis v. Alcon Labatories, Inc., 504 S.E.2d 419, 421

(W. Va. 1998).   The court must answer the legal question of

"whether conduct may reasonably be considered outrageous."   Syl.

Pt. 4, id.

Defendant argues that it did not act in an extreme and

outrageous manner toward Plaintiff, and that Plaintiff's alleged

distress had nothing to do with his submitting a resumé to

Defendant.   (# 84, at 24-26.)   Defendant further contends that

there is no evidence that Plaintiff actually suffered severe

emotional distress.   Id. at 26-27.

Plaintiff's response asserts that Defendant discriminated

against him and that "the discovery of racial and other disgusting

materials peddled with the Management of Arnett & Foster has left

an indelible mark on the Plaintiff."   (# 90, at 20.)   He states

that he "has never felt any kind of emotional distress or hurt the

like of which has been experienced in dealing with Arnett &

Foster."   Id. at 21.   He denies that the emotional distress he

experienced must be linked to the spring and summer of 2005 when he

applied for the position.   Id. at 22.

13

Defendant's reply contends that Plaintiff has failed to prove his claim, that the failure to grant Plaintiff an interview (a "snub") was the worst thing that Defendant did to Plaintiff, and that the offensive materials on Defendant's computer network were not directed at Plaintiff.

Plaintiff's complaint places his claim of intentional infliction of emotional distress in the context of his application for the position of IT engineer. (Complaint, # 1-2, ¶ 46, at 11 ("during the time of his job application at Defendant Arnett & Foster").) Plaintiff alleged that "Arnett & Foster's actions towards Mr. Marsden as set forth above, are evidence of a pattern of age discrimination and/or race discrimination which further constitutes extreme and outrageous conduct." Id. at ¶ 47. Viewing the facts in the light most favorable to the non-moving party, the court will consider the complaint as asserting a claim of intentional infliction of emotional distress during the period May, 2005 to September 26, 2007 (the date the complaint was filed in the Circuit Court of Kanawha County).

The first element of the cause of action is whether the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency. Plaintiff contends that Defendant's conduct was (1) discriminating against Plaintiff in connection with the hiring process for the position of IT engineer and (2) displaying racism which was "stealthy and hidden

from the main view."  (# 90, at 22.)

     The court finds that Defendant did not engage in conduct which
was atrocious, intolerable, extreme or outrageous in connection
with Plaintiff's application for employment.  Plaintiff had no
personal contact whatsoever with Defendant's personnel concerning
his resumé; it was submitted by Ms. Bryant via email.  (# 83-4, Ex.
7, at 74-77.)  Plaintiff admitted during his deposition that he did
not raise the issue with Defendant's personnel during social
activities.  Id. at 83, 92-93.  More than a year passed before
Plaintiff inquired concerning his resumé.  (# 83-5, Ex. 18.)  As
pointed out in Defendant's reply, in addition to Plaintiff's lack
of authorization to be employed, Plaintiff did not present
qualifications on his resumé which matched the qualifications which
Defendant sought in their advertisement for the IT engineer
position.  (# 94, at 6-9.)  There is simply no evidence to
establish that Defendant engaged in atrocious, intolerable, extreme
and outrageous behavior toward Plaintiff in connection with the
application and hiring process for an IT engineer.

     As to matters outside the application and hiring process, the
court further finds that Plaintiff has failed to prove that
Defendant acted with the intent to inflict emotional distress, or
acted recklessly when it was certain or substantially certain
emotional distress would result from its conduct.  Plaintiff has
not shown that Defendant's actions toward Rebecca Marsden were

15

committed in an offensive manner directed at Plaintiff.  The
evidence of racism which Plaintiff and Rebecca Bryant Marsden
discovered on Defendant's computer network was not sent to
Plaintiff and it was available to Rebecca Bryant Marsden without
any intention that it be shared with Plaintiff.  It is apparent
that Rebecca Bryant Marsden was not authorized to download material
from Defendant's computer network and share it with Plaintiff.  The
material of which Plaintiff complains is neither humorous nor
appropriate for any workplace; however it was not circulated to
Plaintiff and it was plainly not intended to cause emotional
distress.  The court notes that the much of the material is dated
2002, almost three years before Plaintiff applied for a position (#
90-3, at 1-14).

### Conclusion

Plaintiff has not shown that there is a genuine issue as to a
material fact (i.e., a fact bearing on the proof of an essential
element of the cause of action of intentional infliction of
emotional distress).  Plaintiff was not "qualified" for the
position of IT engineer because he was not authorized to be
employed in the United States in the summer and fall of 2005; thus
his claims of race and age discrimination must fail.  Defendant's
conduct toward Plaintiff during the application and hiring process
was neither extreme nor outrageous.  Plaintiff has failed to show
that Defendant intentionally inflicted emotional distress on him by

16

disseminating offensive material three years before he applied for a position or by taking actions with respect to Rebecca Marsden. Pursuant to Rule 56(c), *Fed. R. Civ. P.*, Defendant is entitled to judgment as a matter of law.  Accordingly, the court **GRANTS** Defendant's motion for summary judgment (# 83).  The court will enter a Judgment Order this day implementing the ruling.

The Clerk is directed to transmit this Memorandum Opinion to Plaintiff and to counsel of record and to mail a copy to Plaintiff.

ENTER:  October 28, 2009

Mary E. Stanley
United States Magistrate Judge